**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph F. RUTH, Defendant–Appellant.**

**No. 90–3167.**

United States Court of Appeals,
Tenth Circuit.

Sept. 24, 1991.

Julie A. Robinson, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., with her on the brief), Kansas City, Kan., for plaintiff-appellee.

Carol A. Coe, Kansas City, Mo., for defendant-appellant.

Before MOORE and McWILLIAMS, Circuit Judges, and KANE, District Judge.*

McWILLIAMS, Circuit Judge.

In the first count of a five-count indictment, Joseph Ruth, the appellant, and his brother, Thomas Ruth, were charged with conspiring to distribute approximately 670 grams of cocaine from May 16, 1989, until October 2, 1989, in violation of 21 U.S.C. § 846. One of the overt acts set forth in the indictment in connection with the conspiracy charge was that on May 16, 1989, Thomas Ruth distributed "to a confidential informant 447 grams of cocaine at the direction of Joseph F. Ruth."

In a second count, Joseph Ruth, but not Thomas Ruth, was charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a).

In Count three, Joseph and Thomas Ruth were charged with the distribution of 57.06 grams of cocaine on August 8, 1989, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

In a fourth count, Joseph and Thomas Ruth were charged with the distribution of 58 grams of cocaine on September 25, 1989, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

In the fifth and final count, Thomas Ruth was charged with using or carrying a Smith and Weston .38 calibre five-shot revolver during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Joseph Ruth later entered into a plea agreement with the United States Attorney whereby he agreed to plead guilty to Count 3 and the government agreed to dismiss Counts 1, 2, and 4 as to Joseph Ruth at the time of sentencing.[1] The four-page typewritten plea agreement provided, *inter alia,* as follows: (1) the government would detail for the court the factual basis of the offense and would provide the United States Probation Officer with "all pertinent and relevant information concerning the offense *and related conduct*" (emphasis added); (2) a stipulation that on August 15, 1989, Joseph Ruth accepted from one Guy Caster the sum of $1,000 as partial payment for 57.06 grams of cocaine which Caster had purchased for Thomas Ruth on August 8, 1989; (3) a further stipulation that certain tape recordings of conversations between Joseph Ruth and confidential informants on June 26, 1989, July 8, 1989, July 28, 1989, August 15, 1989, September

---

* Honorable John L. Kane, United States District Judge for the District of Colorado, sitting by designation.

1. As stated, Count 5 charged Thomas Ruth, but not Joseph Ruth, with using and carrying a weapon in the course of a drug trafficking crime. Thomas Ruth is not a party to this appeal.

18, 1989, and September 27, 1989, which tapes were attached to the plea agreement as Exhibit A, were true and correct; (4) the government expressly reserved the right to present all information and evidence concerning this transaction and "any other conduct or circumstance" relevant and pertinent to the court's calculation of the applicable range under the Sentencing Guidelines; (5) the government would not oppose a two-level reduction for Ruth's "acceptance of responsibility" if in fact Ruth accepted such; (6) an "understanding" by Ruth that the district court is not a party to the agreement and is not bound thereby; and (7) a further understanding by Ruth that he would not be permitted to withdraw his plea of guilty, once made, merely because he was dissatisfied with his sentence.

In accord with the plea agreement, Joseph Ruth pleaded guilty to Count 3 in the indictment. At sentencing, the government dismissed Counts 1, 2, and 4. Joseph Ruth was sentenced to imprisonment for 66 months and ordered to pay to the United States a fine in the amount of $12,550.

Ruth appeals his sentence and urges three matters: (1) In calculating the base offense level, the district court erred in accepting the probation officer's determination of the amount of cocaine involved; (2) the district court erred in failing to grant Ruth a two-level reduction for his acceptance of responsibility; and (3) the district court erred in assessing Ruth a $12,550 fine.[2]

■ In a drug case, the quantity of drugs involved affects the defendant's base offense level, i.e., the more drugs involved the higher the base offense level. In calculating the quantity of drugs involved, the probation office in the first instance, and the district court ultimately, are not limited to the amount of drugs involved in the count, or counts, of which the defendant stands convicted. Sentencing Guidelines §§ 1B1.3(a)(2) and 3D1.2(d) require consideration of "all such acts and omissions that were a part of the same course of conduct or common scheme or plan as the offense of conviction." In *United States v. Rutter*, 897 F.2d 1558, 1562 (10th Cir.1990) we held that in determining the base offense level of a defendant in a drug case the aggregate amount of drugs involved should be used if such "were part of the same course of conduct or common scheme or plan as the offense of conviction," regardless of whether the defendant was convicted of the underlying offenses pertaining to the additional amounts. *See also United States v. Shorteeth*, 887 F.2d 253, 255 (10th Cir.1989).

■ In the instant case, the probation officer factored into his determination of Ruth's base offense level the 447 grams of cocaine allegedly sold Jesse Coleman and Larry Walter on May 16, 1989 by Thomas Ruth, Joseph Ruth's brother. Counsel for Ruth filed an objection to any inclusion of the 447 grams of cocaine sold Coleman and Walter by Thomas Ruth on May 16, 1989, on the grounds that such was not a part of the same course of conduct or common scheme or plan as the offense charged in Count 3 of the indictment, which was the only count to which Joseph Ruth pleaded guilty.

Before sentencing, the district court held an evidentiary hearing at the conclusion of which the district court held that the 447 grams was properly included in the deter-

**2.** Counsel for Ruth filed a notice of appeal out of time. On partial remand from this court, the district court denied a motion to file an untimely notice of appeal. As indicated, a notice of appeal had in fact been filed one day late, and counsel's excuse therefor was that she, an insulin-dependent diabetic, was pregnant at the time and that during the 10–day period after Ruth was sentenced, and thereafter, she was experiencing pregnancy problems and was under continuous medical supervision and that she, in fact, had born a child on June 6, 1990. Notwithstanding counsel's recitation of her medical problems, which the district court accepted as true and correct, the district court concluded that counsel had not made a showing of such "excusable neglect" as would excuse the untimely filing of both the notice of appeal and the motion for an extension of time to file a notice of appeal. At oral argument in this court, government's counsel, in effect, conceded error by the district court in refusing to grant counsel's request that she be allowed to file an untimely notice of appeal. We agree with the government's position on this matter and will resolve the appeal on its merits.

mination of Ruth's base offense level. Counsel renewed her objection to such inclusion to the district court, which overruled such renewal. On appeal, counsel's initial argument is that the district court improperly factored into Ruth's base offense level the 447 grams of cocaine sold Coleman and Walter on May 16, 1989, by Thomas Ruth.

In our view, the record supports the district court's finding that the May 16 transaction was a part of the same course of conduct or common scheme or plan as the offense charged in Count 3 to which Ruth pleaded guilty. As above stated, in Count 1 of the indictment, Joseph and Thomas Ruth were charged with conspiring to sell cocaine from May 16, 1989, to October 1, 1989. One of the overt acts was the sale of 447 grams of cocaine by Thomas Ruth to a "confidential informant at the direction of Joseph Ruth." Also, as above stated, Ruth pleaded guilty to Count 3 which charged both Joseph and Thomas Ruth with the sale of 57.06 grams of cocaine on August 8, 1989.

In ruling on Ruth's objections to the presentence report, the district court had before it the presentence report, Ruth's objections thereto, the probation officer's response to Ruth's objections, the testimony adduced at the hearing on Ruth's objections and certain depositions. From such it would appear that it was the government's position that from May to October, 1989, Joseph Ruth and his brother, Thomas, conspired with each other, and others, to distribute cocaine in the Kansas City, Kansas area, and in Counts 3 and 4 both Ruths were charged with the actual distribution of cocaine on August 8, 1989, and September 26, 1989, respectively. Further, it was the government's position that it was Joseph Ruth who bought, and brought, the cocaine to Kansas City, Kansas and then had his brother, and others, distribute it. It would appear that on occasion the ones purchasing from Thomas Ruth would make payment to Joseph Ruth. And the latter in pleading guilty to Count 3 admitted that he had been a party to the distribution of cocaine on August 8, 1989.

Coleman and Walter were arrested on May 17, 1989, as they "sold" 447 grams of cocaine to undercover agents. Coleman stated to the arresting officers that he had obtained the cocaine on May 16, 1989, from Thomas Ruth. Coleman also stated that Joseph Ruth was not present at the time. However, in his deposition, Coleman testified that on May 14, 1989, he had negotiated with both Joseph Ruth and Thomas Ruth in the former's apartment for the sale which then took place on May 16, 1989. In this regard, Joseph Ruth's taped conversations with the confidential informants tended to corroborate Coleman's statement that he had made arrangements for the May 16 distribution with Joseph Ruth. In sum, the record does support the district court's finding that Joseph Ruth was involved in the May 16, 1989, transaction and that such was a part of the overall scheme. We reject the suggestion that because the district court declined to find that Joseph Ruth was the manager or head of the drug operation, the district court was foreclosed from finding that Joseph Ruth was involved in the May 16, 1989 transaction. Such does not necessarily follow.

 Ruth's second ground for reversal is the refusal of the district court to grant him a two-point reduction for his "acceptance of responsibility." In this regard, a defendant bears the burden of proof where he contends he should have been given a reduction in his base offense level based on acceptance of responsibility. *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990). A guilty plea to one count of a multi-count indictment does not necessarily entitle a defendant to a reduced offense level based on acceptance of responsibility. *United States v. Whitehead*, 912 F.2d 448, 450 (10th Cir.1990). In the instant case, it would appear from the record that Joseph Ruth accepted responsibility for his acts underlying Count 3, and little more. Certainly he did not accept responsibility for the May 16, 1989 transaction, which we have now concluded he participated in. The district court did not err in refusing to give Ruth a two-point reduction in his base offense level based on his overall acceptance of responsibility.

As his final ground for reversal, Ruth claims that the district court erred in assessing him a fine of $12,500 when there was no evidence that he could ever pay a fine in that amount. Sentencing Guidelines § 5E1.2(a) provides that a fine shall be imposed in all cases except where the defendant establishes that he is unable to pay a fine or is not likely to ever become able to pay a fine. In this case, with a base offense level of 26, the guideline range for fines is $12,500 to $125,000. Here, the district court imposed the minimum fine, $12,500, based on Ruth's "financial profile" and his "future earning potential." At the time of his arrest, Ruth had considerable assets, including an expensive car, an expensive boat, a house in Texas, and $25,000 in cash. It is true that some, though not all, of his assets were seized in a forfeiture proceeding. However, a loss of assets obtained in illegal activity does not insulate a defendant from a fine. *United States v. Walker*, 900 F.2d 1201, 1207 (8th Cir.1990). Further, the record showed that Ruth had considerable *potential* earning capacity. He was described as a "wizard" auto mechanic. We find no error in the fine imposed on Ruth.

Judgment affirmed.