UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark James DAHLMAN,
Defendant–Appellant.

No. 92–2136.

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1993.

John B. Leyba, Las Cruces, NM, for defendant-appellant.

Don J. Svet, U.S. Atty.; for the District of New Mexico, and Tara C. Neda, Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee.

Before McKAY, Chief Judge, TACHA, Circuit Judge, and KANE, District Judge.*

McKAY, Chief Judge.

In October of 1991, Defendant was charged with conspiracy to manufacture psilocybin, manufacturing psilocybin, and manufacturing less than fifty marihuana plants. Defendant was also charged with six counts of carrying and using firearms in relation to the above drug offenses. Defendant pleaded guilty to the drug offenses and consented to a bench trial on the firearms charges where he was subsequently convicted on all counts. Defendant now appeals.

I.

A.

Defendant contends the trial court erred in denying his motion to suppress evi-

---

* Honorable John L. Kane, United States Senior District Judge for the District of Colorado, sitting by designation.

dence. He asserts that the search warrant was overbroad in that it did not state with particularity the places to be searched.[1] Specifically, Defendant asserts the warrant at issue in this case did not authorize a search of the cabin in which he was residing.[2] At issue is whether the guns seized in the cabin in which Defendant was residing were properly admitted into evidence.

In this case, the warrant included the following description of the property to be searched: "Location of the search will be Tee Pee Ranch Phase II, Type II Subdivision, Catron County, New Mexico, Lots 128 and 129. Lots 128 and 129 are located at the intersection of Wilderness Lane and Lance Lane." (Def.Ex. A, Attachment "B").

As conducted, the search encompassed a camping trailer, the cabin in which Defendant was residing, and the surrounding grounds.[3] The search of the trailer and its surrounding area revealed the contraband that was the basis for the drug charges to which Defendant pleaded guilty. In the cabin, the officers discovered the firearms that served as the basis for the firearms charges.

▮ Our standard of review for the denial of a motion to suppress is to accept the trial court's findings of fact unless clearly erroneous and to view the evidence in the light most favorable to the government. *United States v. Anderson,* 981 F.2d 1560, 1566 (10th Cir.1992). However, the determination of the sufficiency of a warrant under the Fourth Amendment is a conclusion of law we review de novo. *Id.*

The Fourth Amendment provides that "no warrants shall issue . . . without particularly describing the place to be searched. . . ." The Supreme Court has noted that

the Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched. . . ." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas . . . , the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987).

▮ As we have previously stated, a " 'description is sufficient if [it] enables the officers to ascertain the place to be searched' with reasonable effort." *United States v. Sturmoski,* 971 F.2d 452, 458 (10th Cir.1992), *quoting United States v. DePugh,* 452 F.2d 915, 920 (10th Cir.1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2452, 32 L.Ed.2d 805 (1972). Applying this standard, we have held that a partially erroneous description was not fatal where officers nonetheless were able, with reasonable effort, to ascertain the area to be searched. *DePugh,* 452 F.2d at 920. Likewise, we have ruled that a warrant authorizing the search of a certain premises

1. Defendant does not contend that the warrant was wanting for probable cause, or that no probable cause existed to seize the items listed.

2. Defendant has also argued on appeal that the warrant did not authorize a search of a trailer wherein officers discovered evidence of Defendant's drug activities. We hold that this argument has been waived by the Defendant's non-conditional guilty plea to the drug charges. During Defendant's plea allocution, the following colloquy took place:

THE COURT: Do each of you understand that by pleading guilty that you waive the right now or in the future to object to the legality of your confession, admission or the seizure of any evidence in connection with the respective charges against you? Is that understood, Mr. Dahlman?

MR. DAHLMAN: Yes, your honor.

MR. LEYBA: (Defendant's attorney) Your Honor, may I add to that. We are not pleading to the whole indictment. Some of these charges are going to be tried by the Court, so we're not giving up the right with respect to the guns.

(Tr. Vol. III, at 58–59.)

3. A no-knock entry of the cabin was conducted which included the "rake and brake" of a cabin window and the detonation of an explosive device intended to distract and disorient the cabin's occupants.

Defendant has argued both in the trial court and on appeal that the no knock entry was unjustified under the circumstances of this case, and that the evidence seized in the home should be suppressed as a result. We address this argument *infra,* Part II.

that is otherwise adequately described permits officers to search vehicles located on the curtilage when the objects of the search might be located in those vehicles, even though the warrant does not specifically authorize the search of vehicles. *Sturmoski,* 971 F.2d at 458 (authorizing search of horse trailer even though warrant only specifically authorized a search of buildings); *United States v. Gottschalk,* 915 F.2d 1459, 1461 (10th Cir.1990) (authorizing search of automobiles even though warrant only specifically authorized the search of a residence).

■ In the instant case, the warrant only authorized the search of specified subdivision lots. No mention was made of any residence or other structures to be searched. Thus at issue is the question of whether a warrant authorizing the search of subdivision lots permits officers to conduct a search of a residence located thereon.

■ The government attempts to overcome the lack of particularity of the description of the place to be searched by referring to the facts contained in the search warrant affidavit. The government asserts the affidavit specifically mentioned the residence, indicated its owner, and related that prior to applying for the warrant, the officers had surveilled the premises and had become confident of its location.

In addition, the government urges us to adopt the reasoning of the trial court, which denied Defendant's motion to suppress based on *United States v. Alexander,* 761 F.2d 1294 (9th Cir.1985). In *Alexander,* the court held that "a warrant is valid when it authorizes the search of street address with several dwellings if the defendants are in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect." *Id.* at 1301.[4]

We find both of these positions unpersuasive. In *United States v. Leary,* 846 F.2d 592, 603 (10th Cir.1988), we noted as follows:

It is true that the particularity of an affidavit may cure an overbroad warrant, but

only "where the affidavit and the search warrant … can be reasonably said to constitute one document. Two requirements must be satisfied to reach this result: first, the affidavit and search warrant must be physically connected so that they constitute one document; and second, the search warrant must expressly refer to the affidavit and incorporate it by reference using suitable words of reference."

(quoting 2 W. LaFave, *Search and Seizure* § 4.6(a), at 241 (2d ed. 1987). In the instant case there is no indication in the record that the affidavit was physically attached to the warrant. Furthermore, there are no words of reference in the warrant incorporating the allegations and factual assertions of the affidavit. Accordingly, we hold that the government may not rely on the affidavit to cure the warrant's lack of particularity in describing the place to be searched. *See United States v. Williamson,* 1 F.3d 1134, 1136 n. 1 (10th Cir.1993).

We likewise find the trial court's reliance on *Alexander* to be unpersuasive under the circumstances of this case. Unlike the instant case, the warrant in *Alexander* specifically authorized the search of all buildings located at a particular street address. In the instant case, the location was merely described as two numbered subdivision lots. Where a warrant only identifies the property to be searched by subdivision lots, there is some ambiguity as to the scope of the area to be searched. The description could refer just to the ground itself, or to the ground and all structures, including residences located on the subdivision lot.

■ We are of the view that under such circumstances and given our well-founded tradition of recognizing the sanctity of the home, a warrant authorizing the search of a lot of land without a more precise definition of the scope of the search is inconsistent with the particularity requirement of the Fourth Amendment, and does not suffice to authorize a search of a residence located on the land. As the Supreme Court has noted,

4. At issue in *Alexander* was whether the warrant authorized the search of a trailer located on the premises where the warrant authorized the search of "all buildings, out buildings, garages, yard areas, trash containers, storage areas and containers used in connection with or within the curtilage of said premises and buildings." *Id.* at 1300.

the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed."

. . . .

The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their ... houses ... shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."

*Payton v. New York,* 445 U.S. 573, 585, 589–90, 100 S.Ct. 1371, 1379, 1381–82, 63 L.Ed.2d 639 (1980) (alterations in original) (citations omitted). Consequently, we conclude that the trial court erroneously ruled that the warrant sufficiently described the scope of the search. We hold that where officers intend to search a residence, the description of the property to be searched may not be so ambiguous as to leave doubt as to the scope of the search.

By our holding, we do not intend to cast doubt on our prior decisions approving of the search of vehicles not specifically mentioned where an otherwise valid search of a residence and surrounding structures has been approved. *See Sturmoski,* 971 F.2d at 458; *Gottschalk,* 915 F.2d at 1461. Rather, we wish to emphasize that when officers intend to search a residence, an ambiguous warrant describing only the lot of land to be searched

is inconsistent with the Fourth Amendment's particularity requirements given the special sanctity our jurisprudence has placed on the home.

We recognize that the rule of law we announce today is at odds with positions taken by the Eighth and Ninth circuits. *United States v. Williams,* 687 F.2d 290 (9th Cir. 1987); *United States v. Meyer,* 417 F.2d 1020 (8th Cir.1969).[5] However, we view the traditional sanctity given to a residence as requiring law enforcement officers to be more particular in their description when they wish to search a known residence. An ambiguous property description such as that used in the instant case is insufficient to justify the intrusion and search of a residence.

■ In addition, we have serious reservations about condoning a search of a residence whenever the word "premises" is contained in a warrant. The warrant used in the instant case utilized a standard form, which required that a box be checked indicating whether a "person" or "premises" is to be searched. We cannot accept the position that checking a box that fortuitously uses the word "premises" in boiler plate, as was done in this case, would always authorize the search of a residence at any given location. In fact, the *Williams* court impliedly recognized our concern by focusing on the magistrate's actual intent when choosing to use the word "premises." In our view, the preferred method for indicating the search of a residence is always to indicate in the warrant that a residence will be searched. At the very least, we hold that a residence may not be searched when the property description is ambiguous as it was in the instant case.

5. In *Meyer,* a warrant was issued to search premises known as "80 acres in the name of [the defendant]" and described in geographical terms. *Meyer,* 417 F.2d at 1023. When the defendant asserted the warrant did not authorize a search of his home, the court concluded that the word "premises" when used to describe an estate in land "almost invariably" refers to the land and tenements or appurtenances thereto. *Id.* Relying on the definition of "premises" and the fact that the list of items to be seized included items that would normally be found only within the confines of a building, the court concluded that the description was not lacking in

particularity and affirmed the use of evidence seized in defendant's home.

> In *Williams,* a warrant authorized the search of premises located in the county of Josephine described as follows: Canyon Creek Mine No. 1, 2, and 3 in Township 39 South, Range 9, Section [sic] 10 and 11, Willamette Meridian. *Williams,* 687 F.2d at 292. Relying on *Meyer,* the court went on to hold that the magistrate's use of the word "premises" reflected an intent that all structures, including a cabin, be searched. Accordingly, the court rejected the defendant's contention that the search of the cabin was unauthorized. *Id.* at 293.

The rule we announce today does not create an onerous burden for law enforcement personnel. As in the instant case, merely mentioning the word "residence" in the warrant would have sufficed to counterbalance the ambiguous property description. Likewise, attaching the affidavit to the warrant and including words in the warrant incorporating by reference the property descriptions contained in the affidavit would have been adequate. Where, such actions are taken, few questions will exist as to the scope of the area to be searched and appellate courts will not be placed in the position of second-guessing the magistrate's intentions.

### B.

Having concluded that the warrant was overbroad in that it failed to particularize the area to be searched, we must now determine whether this defect required the exclusion of evidence in this case. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court announced an exception to the exclusionary rule, providing that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant.

■ As the Supreme Court stated in *Leon*, "the suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*, 468 U.S. at 918, 104 S.Ct. at 3418. Moreover, it is clear that an "officer's reliance on the magistrate's ... determination ... on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing the warrant was properly issued." *Id.* at 922–23, 104 S.Ct. at 3420 (citations and footnotes omitted).

In determining whether the *Leon* exception should be applied, the

> "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have

known the search was illegal despite the magistrate's authorization." ... To answer this "objectively ascertainable question," we are to consider "all of the circumstances," and assume that the executing "officers have a reasonable knowledge of what the law prohibits."

*Leary*, 846 F.2d at 607, *quoting Leon*, 468 U.S. at 919, 922, 104 S.Ct. at 3418, 3420.

■ After reviewing the record in this case, and in light of the new rule we announce today, we cannot say that the officers acted in bad faith in relying on the property description contained in the warrant. This is particularly so since the rule we announced today is contrary to existing United States Court of Appeals precedent from other circuits. Under these circumstances, we hold that a disciplined application of the principles enunciated in *Leon* precludes exclusion of the evidence.

■ One final point concerning *Leon* deserves mention. This court could have simply affirmed the trial court on the good faith issue without first discussing the underlying Fourth Amendment issue, *i.e.*, the validity of the warrant. Indeed, the rule set forth in *Leon* concerning the sequential order of analysis in good faith cases is primarily one of discretion. However, a close reading of *Leon* reveals that, while the Supreme Court intended to vest lower courts with discretion, the preferred sequence is to address the Fourth Amendment issues before turning to the good faith issue unless there is no danger of "freezing" Fourth Amendment jurisprudence or unless the case poses "no important Fourth Amendment questions." *See Leon*, 468 U.S. at 924–925, 104 S.Ct. at 3421–3422.

The soundness of this practice is apparent from examining the facts of the case before us today. In this case, the officers acted in good faith because they relied on a warrant issued by a neutral magistrate and the officers genuinely believed that the word "lot" and the boilerplate language in the warrant allowed them to search the residence. This belief was reasonable in part because this practice had not been ruled unconstitutional prior to today. If we were to have avoided addressing the underlying Fourth Amendment question today, a magistrate could le-

gitimately issue an identical warrant tomorrow and the officers could engage in the same conduct without consequence—since there would be no adverse ruling to guide the magistrate or the officers, the warrant would be issued and the search would once again be valid under principles of good faith. In effect, Fourth Amendment jurisprudence would be frozen on this issue because of this never-ending cycle. Thus, the policy of avoiding "freezing" Fourth Amendment jurisprudence, discussed by the Court in *Leon*, compels us in this case to resolve the constitutional issue so that magistrates and law enforcement officers do not continue to make the same mistake indefinitely.

## II.

 Defendant also argues that evidence seized in the home should be suppressed because it was obtained in violation of the "no-knock" rule, 18 U.S.C. § 3109. Defendant argues that police officers were not justified in a no-knock entry because exigent circumstances did not exist in this case. The term "exigent circumstances" requires that the officers hold an objectively reasonable belief that there is an urgent need for immediate action. *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir.1989). This urgent need includes the likelihood that notice would result in the destruction of evidence or harm to the officers. *United States v. Moland*, 996 F.2d 259, 260 (10th Cir.1993). The question whether exigent circumstances existed to justify a no-knock entrance in this case is a mixed question of law and fact. *Stewart*, 867 F.2d at 584. The trial court's factual findings are reviewed under a clearly erroneous standard, while the determination of whether those facts satisfy the exigency requirement is a question of law subject to de novo review. *Id.*

 Our review of the record in this case indicates that police conduct was justified. Prior to executing the warrant, police became aware through an informant of Defendant's statement that he intended to shoot it out with police rather than be arrested. In addition, officers were aware of a prior occasion in which Mr. Dahlman had reached for a weapon when he was in the process of being

arrested. The officers were forced to approach in daylight, along an open road in full view of the cabin. As the officers approached the residence, the occupants were alerted to their presence by the barking guard dog. The daylight enabled the occupants of the cabin to see outside, while the police were unable to see into the cabin. After considering the particular facts of this case, we hold that the officers could reasonably have believed that exigent circumstances existed. Accordingly, we hold that the no-knock entry into Defendant's cabin was justified and that Defendant's contentions in this regard are without merit.

## III.

 Defendant also contends that the trial court erred in denying him a two point reduction in calculating his offense level pursuant to U.S.S.G. § 3E1.1. The thrust of his argument is that it was unfair for Defendant's codefendant to receive a reduction when he was denied such a reduction, given their respective pleas. In reviewing sentences imposed under the Sentencing Guidelines, we are limited to determining whether the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is outside the applicable range . . .; or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(e) (1988). We give "due deference to the district court's application of the guidelines to the facts," *id.*, while reviewing the application fully for errors of law. *United States v. Havens*, 910 F.2d 703, 704 (10th Cir.1990). We review the district court's factual findings under the clearly erroneous standard. *Id.* The issue of acceptance of responsibility for purposes of downgrading the sentence under the Guidelines is a question of fact subject to the clearly erroneous standard. *United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir.1990), *cert. denied*, 498 U.S. 1030, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991). We will not disturb the trial court's determination on this issue unless it is without foundation. *Id.*

■ After reviewing the record in this case, we find Defendant's position unpersuasive. A defendant is entitled to a reduction in offense level only "[i]f the defendant *clearly* demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct...." U.S.S.G. § 3E1.1(a) (emphasis added). Moreover, a defendant bears the burden of proof on this issue. *United States v. Ruth,* 946 F.2d 110, 113 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1189, 117 L.Ed.2d 431 (1992).

■ Defendant pleaded guilty to only three counts of a multi-count indictment. As we have previously noted, "a guilty plea to [only part] of a multi-count indictment does not necessarily entitle a defendant to a reduced offense level based on acceptance of responsibility." *Id.* The guidelines similarly note that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction ... as a matter of right," U.S.S.G. § 3E1.1(c), and only "[i]n rare situations [may] a defendant clearly demonstrate an acceptance of responsibility ... even though he exercises his constitutional right to a trial" and puts the government to its burden of proof. U.S.S.G. § 3E1.1, comment. (n. 2). We find none of the four factors listed in section 3742(e) applicable to this case. Nor do we find the district court's factual findings to be clearly erroneous. Accordingly, under the circumstances of this case, we hold that the trial court did not err in refusing to give Defendant a two-point reduction in his offense level based on his overall acceptance of responsibility.

## IV.

Defendant next contends that the trial court erred in determining his base offense level by utilizing U.S.S.G. § 2D1.1 when determining the weight of marihuana seized. Defendant asserts the actual weight of the marihuana seized was only 753.7 grams, but that his sentence for the marihuana was based on a statutory formula which computed the weight at 4,500 grams by multiplying the number of plants (45) by 100 grams. Defen-

dant asserts this formula is arbitrary and capricious and urges this court to adopt the reasoning in *United States v. Streeter,* 907 F.2d 781 (8th Cir.1990), *overruled on other grounds by United States v. Wise,* 976 F.2d 393 (8th Cir.1992), which determined that a court must use the actual weight of the marihuana seized.

■ After setting forth the appropriate base offense level for a particular controlled substance, the Sentencing Guidelines provide as follows:

> In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1 (n. *).

In *Streeter,* the Eighth Circuit concluded that § 2D1.1's scheme of considering each plant as the equivalent of 100 grams of marihuana in cases involving less than fifty plants was inconsistent with 21 U.S.C. § 841(b)(1)(D)'s mandate that weight alone be determinative in cases involving less than fifty plants.[6] In reaching this conclusion, the court noted that although the Guidelines could implicitly repeal previous statutes, such was not the case where Congress had revisited 21 U.S.C. § 841(b)(1)(D) since the promulgation of the Guidelines. The court also noted that "if there were some reason to believe the average weight of marihuana plants grown in quantities of less than fifty is one hundred grams, the Commission's choice could perhaps be defended." *Streeter,* 907 F.2d at 790. However, relying on the fact that the Commission had given no rational basis for its decision to equate one marihuana plant with 100 grams of marihuana, the court concluded § 2D1.1's formula for determining weight was arbitrary and capricious and could not be given effect.

**6.** 21 U.S.C. 841(b)(1)(D) provides that:
In the case of less than 50 kilograms of marihuana, except in the case of 50 or more

marihuana plants regardless of weight, ... such person shall, ... be sentenced to a terms of imprisonment not more than 5 years....

Since the Eighth Circuit's decision in *Streeter*, the commentary to § 2D1.1 has been amended. The background on this section now notes the following with regard to fewer than fifty marihuana plants:

> The decision to treat each plant as equal to 100 grams is premised on the fact that the average yield from a mature marihuana plant equals 100 grams of marihuana. In controlled substance offenses, an attempt is assigned the same offense level as the object of the attempt (see § 2D1.4). Consequently, the Commission adopted the policy that, in the case of fewer than fifty marihuana plants, each plant is to be treated as the equivalent of an attempt to produce 100 grams of marihuana, except where the actual weight of the usable marihuana is greater.

U.S.S.G. § 2D1.1, comment. (backg'd).

We are of the view that congressional acceptance of subsequent amendments to § 2D1.1 requires application of this section. *See United States v. Thompson,* 976 F.2d 666, 673 (11th Cir.1992) (concluding that in light of subsequent amendments, *Streeter* was no longer persuasive), *cert. denied sub nom Howard v. United States,* — U.S. —, 113 S.Ct. 3010, 125 L.Ed.2d 701 (1993). Moreover, the comment to § 2D1.1 now sets forth an adequate explanation for § 2D1.1's treatment of cases involving less than fifty marihuana plants and dispels any assertion that § 2D1.1's treatment of cases involving less than 50 is arbitrary or capricious. *See id.; cf. United States v. Lee,* 957 F.2d 778, 784–85 (10th Cir.) (finding rational basis for sentencing scheme which treats more than 100 plants as each being the equivalent of one kilogram of marihuana and requiring minimum mandatory sentence), *cert. denied,* — U.S. —, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992); *United States v. Eves,* 932 F.2d 856, 859 (10th Cir.) (approving and applying congressional determination that sentences be based on number of plants rather than actual weight because defendant who is growing newly planted marihuana plants is just as culpable as if plants were mature), *cert. denied,* — U.S. —, 112 S.Ct. 236, 116 L.Ed.2d 192 (1991). Accordingly, we hold that the trial court did not err in setting

Defendant's base offense level utilizing the 100 gram per plant formula.

**V.**

Defendant contends that counts four through nine of the superceding indictment failed to allege the necessary scienter element of the 18 U.S.C. § 924 charges. Specifically, Defendant argues that the indictment failed to allege that Defendant committed these offenses with knowledge. In making this argument, Defendant relies on *United States v. Hawkins,* 741 F.Supp. 1234 (N.D.W.Va.1991). After a review of the record in this case and the authority relied on by Defendant, we find this argument unpersuasive.

An indictment need only meet minimal constitutional standards, *United States v. Edmonson,* 962 F.2d 1535, 1541 (10th Cir.1992), and the sufficiency of an indictment is determined by practical rather than technical considerations. *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988). In this case the indictment adequately informed Defendant of the charges against him. The language "during and in relation to" is the equivalent of or meets the scienter requirements of knowledge so as to adequately distinguish cases where a firearm is merely present, and gives the Defendant adequate notice of the elements of the offense with which he has been charged. We note that the Fourth Circuit, the circuit in which the *Hawkins* decision arose, has expressly disagreed with the district court's reasoning in *Hawkins. United States v. Sutton,* 961 F.2d 476, 479 n. 2 (4th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 171, 121 L.Ed.2d 118 (1992). Finally, we note that Mr. Dahlman has not claimed prejudice in this case by the alleged inadequacies of the indictment. Accordingly, under the circumstances of this case Defendant's argument in this regard is without merit.

**VI.**

Defendant also asserts that there is insufficient evidence to support his convictions on counts four through nine, the § 924 charges. We will reverse only if we conclude

after reviewing the evidence in the light most favorable to the government that no rational juror could find appellant guilty beyond a reasonable doubt. *United States v. Morehead,* 959 F.2d 1489, 1499 (10th Cir.1992).

■ In *United States v. Parrish,* 925 F.2d 1293, 1297 (10th Cir.1991), we held that under § 924 the government must establish that (1) the defendant has "ready access" to the firearm, and (2) the firearm was "an integral part" of the crime and increased the likelihood that the crime would succeed. Here, there is no question that Defendant had access to the guns, so the only possible issue is the relationship of the firearms to the crime of manufacturing illegal drugs.

In *Parrish,* we explained that this element requires a nexus between the readily accessible gun and the offense. We described the nexus in that case as follows:

> Firearms are used by narcotics dealers to protect themselves, their drugs, and their money. In this way guns facilitate the illegal drug activities. As the Eighth Circuit has pointed out, the "mere presence and ready availability at a house where drugs are dealt" is sufficient to establish use of a firearm under section 924(c) [*United States v. LaGuardia,* 774 F.2d 317, 319 (8th Cir.1985) ]. The cases interpreting the requirements of section 924(c) evidence a presumption of a nexus between the firearm and offence when an individual with ready access to the firearm is involved in a drug trafficking offense. However, a defendant charged with a drug trafficking offense may overcome this presumption by presenting some evidence suggesting the firearm was present for a reason other than facilitating the drug operation.

*Parrish,* 925 F.2d at 1298 (citations omitted). Under this standard, we see no basis for reversing these convictions. As in *Parrish,* Defendant has not presented any evidence indicating another reason for the presence of the guns. *Cf. United States v. Sullivan,* 919 F.2d 1403, 1430–32 (10th Cir.1990) (defendant presented evidence showing that guns were part of someone else's collection), *cert. denied,* —— U.S. ——, 113 S.Ct. 285, 121 L.Ed.2d 211 (1992). Defendant had easy

access to the weapons while he was participating in a drug crime. Defendant's cabin appears to have played a central role in the drug operation, and these weapons undoubtedly served to protect the drug enterprise. *Cf. United States v. Williams,* 923 F.2d 1397, 1402 (10th Cir.1990) (guns are used to embolden the actor and to ensure that drug customers do not attempt robbery), *cert. denied,* —— U.S. ——, 111 S.Ct. 2033, 114 L.Ed.2d 118 (1991). Accordingly, we hold that Defendant's contentions in this regard are without merit.

### VII.

■ Finally, Defendant argues that the trial court erred by improperly and arbitrarily merging some of the § 924 counts in the indictment and thereafter imposing consecutive sentences on the counts that were not so merged. We find this argument unpersuasive. In this case the trial court found that both firearms facilitated all three of the underlying offenses. This court has previously held that where a gun is paired with different drug offenses, assessment of multiple penalties under 18 U.S.C. § 924(c) is appropriate. *United States v. Abreu,* 962 F.2d 1425, 1433–34 (10th Cir.1992), *rev'd en banc,* 962 F.2d 1447 (10th Cir.1992), *cert. denied sub nom Thornbrugh v. United States,* —— U.S. ——, 113 S.Ct. 220, 121 L.Ed.2d 158 (1992), *and cert. granted and judgment vacated,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993), *aff'd en banc on remand,* 997 F.2d 825 (10th Cir.1993). Accordingly, the number of guns does not control; rather, the focus is on the number of underlying predicate offenses. In this case, Defendant was convicted of three separate drug trafficking offenses. Because a firearm count related to each of the three offenses, the trial court did not err in sentencing Defendant to three consecutive terms on the firearms counts. Accordingly, we hold that Defendant's assertions in this regard are without merit.

To summarize, while we reject the trial court's conclusion that the warrant adequately indicated that a residence would be searched merely by using the word "premises," we affirm the conviction because we find the evidence to have been properly admitted

in accordance with the exception to the exclusionary rule announced by the Supreme Court in *Leon*. We further affirm the trial court's holding that the no-knock entry was justified in this case. We also affirm the trial court's calculation of Defendant's base offense level under the Sentencing Guidelines using the 100 gram per marihuana plant formula, and we affirm the trial court's decision not to accord Defendant a two point reduction in his offense level based on his overall acceptance of responsibility. We hold that the indictment passed constitutional muster, and that there was sufficient evidence to support convictions on counts four through nine of the indictment, the § 924 charges. Finally, we affirm the district court's treatment of the firearms counts as three separate offenses justifying consecutive terms.

The judgment of conviction and the sentence are AFFIRMED.

TACHA, Circuit Judge, dissenting in part and concurring in the judgment.

I concur in the judgment affirming the district court's denial of defendant's motion to suppress evidence obtained in his cabin. I write separately, however, because I cannot endorse the sweeping principle outlined by the majority in Part I.A. of its opinion.

In Part I.A. the majority enunciates the principle that the use of the term "premises" in a warrant with only a description of a tract of land does not bring a residence on that land within the scope of the warrant. Such a general rule is not justified under the Fourth Amendment.

Both the Eighth and the Ninth circuits have held, contrary to the majority's holding in Part I.A., that the term "premises" should generally be construed to include a residence. *United States v. Williams*, 687 F.2d 290, 293 (9th Cir.1982); *United States v. Meyer*, 417 F.2d 1020, 1023 (8th Cir.1969) (focusing on the Black's Law Dictionary (4th ed. 1957) definition of "premises" as "[l]ands and tenements; an estate; land and build-

ings thereon"[1]). I would not go so far as to say that this should be the rule in all cases. However, whether the term "premises" includes a residence on land described in a warrant at the very least should be a case-by-case inquiry.

As the majority points out, the Supreme Court has said:

The manifest purpose of [the] particularity requirement [of the warrant clause of the Fourth Amendment] was to prevent general searches. By limiting the authorization to search to the specific areas . . ., the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987). Consistent with this purpose, there will certainly be situations where it is clear, though only the generalized term "premises" is used in a warrant, that the magistrate intended the scope of a search to include a residence and that from the surrounding circumstances the officers executing the warrant knew the intended scope and were therefore sufficiently guided by the warrant. *See Williams*, 687 F.2d at 293 (focusing on the intent of the magistrate to include buildings in the term "premises"); *Meyer*, 417 F.2d at 1023 ("It is particularly clear here that the word premises was used in the warrant to include . . . [the] buildings standing upon the land, since many of the items sought . . . would in all likelihood be found only within the confines of a building."). In such a situation, so long as there is sufficient probable cause for a search of a residence as well as land, no Fourth Amendment problem inheres. Certainly the better practice is to describe specifically in the warrant any residence or other building to be searched on a premises. However, I am not prepared to say that this is a bright-line requirement.

Applying these principles, I would hold that in this case the term "premises" in the

---

1. The most recent definition of the term "premises" is much the same though with some qualification: "Land with its appurtenances and structures thereon. Premises is an elastic and inclu-

sive term and it does not have one definite and fixed meaning." Black's Law Dictionary (6th ed. 1990).

warrant should be construed to include the defendant's cabin. The record indicates that this is what both the magistrate and the officers who applied for and executed the warrant intended. I note especially that "Attachment 'C'" to the warrant indicating items to be searched for includes items that clearly would only be found indoors—*e.g.* drug records, "large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions." Further, the affidavit of the officers, while technically not part of the warrant, indicates that they intended the warrant request to include defendant's residence and understood that the warrant did so.

I do not disagree with the substance of Part I.B. of the majority's opinion, but under the analysis outlined above I would not reach the good faith exception question in this case. The evidence found in defendant's cabin falls under the valid warrant and is therefore admissible on that ground.

I respectfully dissent from Part I.A. of the majority opinion but concur in the judgment affirming the district court.