**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

THOMAS DUANE SCOTT,

Defendant-Appellant.

No. 99-7113
(D.C. No. 99-CR-17-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Thomas Duane Scott entered a conditional guilty plea to charges of being a felon in possession of a firearm and possession of methamphetamine

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

with intent to distribute. He was sentenced to two concurrent terms of 200 months' imprisonment, to be followed by concurrent three- and five-year terms of supervised release, and he was fined a $100 special assessment for each charge. Mr. Scott claims that he was arrested without probable cause. He challenges the search of a car in which he was a passenger, and he challenges the validity of a search warrant of his home. In addition, he claims that a self-incriminating statement he made while in custody was coerced. We affirm.

I.

Mr. Scott and his wife went to the Wal-Mart store in Ardmore, Oklahoma, as passengers in a car owned and driven by Joni Ellett. At the store, he bought six boxes of over-the-counter Equate Antihistabs. Each box contains forty-eight antihistamine tablets. He immediately tried to buy six more boxes but was refused under Wal-Mart store policy, and he returned to the car. An employee of the Wal-Mart store alerted the local police to Mr. Scott's purchase and attempted second purchase of Equate. Officer Hamblin of the Ardmore police department in turn contacted Lt. Sturges of the Carter County, Oklahoma narcotics task force because Officer Hamblin knew Lt. Sturges had been conducting an investigation of Mr. Scott's suspected drug manufacturing activities. They agreed to meet at the Wal-Mart store. When Mr. Scott returned to Ms. Ellett's car in the parking lot, he was detained for about an hour by Officer Hamblin. After Lt. Sturges and

his partner, Sgt. Watson, arrived at the scene, about an hour after Mr. Scott's initial purchase of the Equate tablets, Lt. Sturges contacted the assistant county district attorney, who advised Lt. Sturges that there was sufficient probable cause to arrest Mr. Scott on a state violation of endeavoring to manufacture methamphetamine. Lt. Sturges then placed Mr. Scott under arrest.

By the time Lt. Sturges and Sgt. Watson arrived, Ms. Scott and Ms. Ellett had returned to the car. Ms. Scott consented to a search of her handbag. There were ZigZag rolling papers and a package of purchased cigarettes in her purse. Ms. Ellett initially refused Lt. Sturgis' request for consent to search the car. However, after Mr. Scott's arrest, Lt. Sturgis called for a drug-sniffing dog to be brought to the parking lot. Ms. Ellett overheard Lt. Sturgis' request for the drug-sniffing dog to come to the scene, and she then consented to the search, verbally and in writing. When the dog arrived, it alerted to the right rear door of the car. The physical search of that portion of the car disclosed a coat, which Mr. Scott claimed as his, concealing a loaded handgun and containing a baggy of crushed pills, a baggy of marijuana, and two syringes with drug residue. At that point, Ms. Scott was arrested on the misdemeanor charge of possession of drug paraphernalia (the rolling papers). Ms. Ellett was released.

While Mr. Scott was in custody subsequent to his arrest, officials obtained two search warrants for Mr. Scott's home, based on substantial evidence of

-3-

weapons possession and of illegal drug manufacture obtained by Lt. Sturges during his investigation. The first search was conducted by federal Bureau of Alcohol, Tobacco, and Firearms agents under a federal search warrant, yielding numerous firearms. The ATF agents noted the presence of drug manufacturing and distribution evidence. The second search was based on a state search warrant written and executed by Lt. Sturges. During the second search, methamphetamine and evidence of illegal drug manufacturing and distribution were seized.

Mr. Scott was initially indicted on four felony charges: two counts of being a felon in possession of a firearm shipped and transported in interstate commerce; possession with intent to distribute more than 100 grams of methamphetamine; and maintaining a place for the manufacture, distribution, or use of methamphetamine. An additional count, use of a firearm during or in relation to a drug trafficking crime, was added in a superceding indictment. After his initial appearance on the pending charges, Mr. Scott initiated contact with Lt. Sturges and Sgt. Watson, telling them that he wanted to talk with them. They agreed and accompanied him to an interview room in the facility. In an interview lasting approximately an hour, he made numerous self-incriminating statements. The district court found that the only promise to Mr. Scott given by Lt. Sturges and Sgt. Watson during this interview was that they would make his cooperation known to the prosecuting attorney.

The district court denied Mr. Scott's pre-trial motions to suppress based on illegal arrest, to suppress the search of the vehicle, to suppress the evidence seized pursuant to the state search warrant, and to suppress his self-incriminating statement. Pursuant to a plea bargain and Fed. R. Crim. P. 11(a)(2), Mr. Scott entered a guilty plea to two of the charges, one count of being a felon in possession of a firearm and possession with intent to distribute more than 100 grams of methamphetamine, contingent on appeal of the district court's denial of his four motions to suppress. The three other charges were dropped by the government.

Mr. Scott now appeals the district court's denial of his motions to suppress. He challenges the legality of his detention and arrest in the parking lot, the legality of the search of Ms. Ellett's car, the validity of the state search warrant used to gain entry to his home, and the voluntariness of his confession. "When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous." *United States v. Gordon*, 168 F.3d 1222, 1225 (10th Cir.) (internal citation omitted), *cert. denied*, 119 S. Ct. 2384 (1999). "[T]he ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable de novo." *Id.*

II.

Mr. Scott claims that all the evidence against him in this case, including his statement of confession, were incident to his detention in the parking lot. In his motion to suppress in the district court, he challenged that detention as an arrest without probable cause.

As an initial matter, we reject Mr. Scott's characterization of his pre-arrest investigative detention in the parking lot as an "arrest." Investigative detention and actual arrest are distinguishable actions carried out for different purposes, and each bears its own standard for use. "A law enforcement officer may stop and briefly detain a person for investigative purposes 'if the officer has a reasonable suspicion . . . that criminal activity "may be afoot."'" *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998) (*quoting United States v. Sokolow,* 490 U.S. 1, 7 (1989)). The propriety of the length of the detention must be considered in light of the law enforcement purposes to be served by the detention and the time reasonably needed to effectuate those purposes. *See United States v. Rutherford*, 824 F.2d 831, 834 (10th Cir. 1987) (detention of "about one hour" acceptable under the circumstances of that case). In contrast, arrest requires the higher standard of probable cause that a crime has been committed. *See United States v. Wright*, 932 F.2d 868, 877 (10th Cir. 1991). Thus, the issues to be examined are whether Officer Hamblin had sufficient

reasonable suspicion of illegal activity for warrantless detention of Mr. Scott in the parking lot of the Wal-Mart store, and whether Lt. Sturges had probable cause for a warrantless arrest.

Mr. Scott argues that he did nothing illegal by purchasing a legal over-the-counter drug at the Wal-Mart store. However, Mr. Scott's purchase of six boxes of this antihistamine immediately followed by an attempt to purchase six more boxes of the drug, while not illegal, did give rise to reasonable suspicion of illegal activity. Equate contains pseudoephedrine hydrochloride, an ingredient necessary to production of methamphetamine. Use of products containing pseudoephedrine hydrochloride for illegal methamphetamine manufacture is sufficiently well-known that Wal-Mart established a policy to limit the quantity sold to any single individual. Before this incident began, Officer Hamblin was aware that Mr. Scott was being investigated for the manufacture and distribution of methamphetamine, and he also had knowledge that products containing pseudoephedrine hydrochloride, such as Equate, could be and had been used in the manufacture of methamphetamine. Mr. Scott's relatively brief warrantless detention in the parking lot was proper here where Officer Hamblin had a reasonable suspicion of criminal activity. The district court did not err in denying Mr. Scott's motion to suppress based on his claim of an unjustified pre-arrest detention in the parking lot.

To the extent that Mr. Scott challenges the arrest itself, Lt. Sturges had personally conducted the previous investigation of Mr. Scott's clandestine illegal methamphetamine manufacturing and distribution activities, and Lt. Sturges also had direct knowledge of Mr. Scott's purchase of a large quantity of Equate and attempt immediately to purchase a second large quantity at the Wal-Mart store. We agree with the district court's ruling that these circumstances constituted probable cause for Mr. Scott's arrest. See *United States v. Troutman*, 458 F.2d 217, 220 (10th Cir. 1972) ("[T]o constitute probable cause for an arrest it must be shown that at the time the officer makes the arrest the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are such as would warrant a prudent man in believing that the person to be arrested has committed an offense.").

III.

Mr. Scott claims that the search of Ms. Ellett's car in the parking lot was illegal, and he appeals the district court's denial of his motion to suppress the fruits of that search. Mr. Scott characterizes the incident as a detention of Ms. Ellett and her car without legal justification after she initially refused to consent to a search of the car, and he characterizes her consent for the search as coerced. These arguments are unavailing. The district court correctly held that

-8-

Mr. Scott, as a mere passenger, lacks standing to challenge the search. *See*

*United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995).[1]


IV.

Mr. Scott challenged the validity of the state search warrant to search his

home, located in a rural area of Carter County, Oklahoma, for drugs and evidence

of drug manufacturing and distribution, noting that the warrant contained an

incorrect location description for his home. He appeals the district court's denial

of his motion to suppress the fruits of the search. He argues that the warrant

described the place to be searched as the <u>first structure</u> on Highway 76 south of

---

[1]      Even if Mr. Scott did have standing to challenge the search, the search as
conducted was permissible because the car's owner, present at the scene,
voluntarily gave her consent. "We determine whether a consent was voluntary
after evaluating the totality of the circumstances. A person who is being detained
may still give a voluntary consent . . . ." *United States v. McRae*, 81 F.3d 1528,
1536-37 (10th Cir. 1996) (internal citations omitted). Consent must be
"unequivocal and specific and freely and intelligently given," and it must be given
"without implied or express duress or coercion." *Id*. at 1537 (citation omitted).
Under the circumstances of this incident, Lt. Sturges had justification to briefly
detain Ms. Ellett and her car in light of her passenger's suspicious conduct and
legal detention and arrest. Although she initially refused to consent to the search,
within minutes she gave verbal and written consent upon overhearing that a
drug-sniffing dog had been requested. Lt. Sturges's request for a drug-sniffing
dog was reasonable under these circumstances and did not constitute coercion for
permission to search. The district court properly denied Mr. Scott's motion to
suppress the fruits of the search of Ms. Ellett's car.

Highway 53 East, when in fact the place to be searched was the <u>first residence</u> but the <u>third structure</u> on Highway 76 south of Highway 53 East. The description of the premises to be searched in the state search warrant was:

> a white wood framed single story, single family dwelling located at HC 63 Box 1400, Healdton, Carter County, Oklahoma. More particularly the first structure south of Highway 53 East on Highway 76, west side of the roadway. The front door of the house faces east. The same being the house occupied by THOMAS DUANE SCOTT, DOB: 01-19-62, SSN: 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 . . . .

R. Vol. I, tab 32, "Response to Defendant's Motion to Suppress Search Pursuant to State Search Warrant," Ex. A, Attachment B, page 000034. We determine the sufficiency of a search warrant de novo. *See United States v. Dahlman*, 13 F.3d 1391, 1394 (10th Cir. 1993).

The description of the premises of a search warrant is required to be given with sufficient particularity that the executing officer can ascertain the place to be searched with reasonable effort. *See id.* After review of the evidence presented to the district court, we agree with the district court that the description on this warrant satisfies the particularity standard, considering the location of this house and the personal knowledge of Lt. Sturges, the officer who was familiar with the house and its location, who wrote the description for the warrant, and who was present for its execution.

V.

-10-

And, finally, Mr. Scott claims that the authorities elicited his self-incriminating statement through fraudulent promises that the charge against his wife would be dropped, that she would be released, and that the prosecutors would exercise leniency toward him. We review the voluntariness of a confession under the de novo standard. *See United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999). The district court's underlying factual findings are accepted unless they are clearly erroneous. *See United States v. Nguyen*, 155 F.3d 1219, 1222 (10th Cir. 1998). Careful review of the record on appeal does not support Mr. Scott's contentions. He was not in restraints at any time pertinent to making these self-incriminating statements. He approached Lt. Sturges and Sgt. Watson and requested an interview. He was read his *Miranda* rights. He executed a written waiver of those rights. The interview session lasted about an hour. Neither Lt. Sturges nor Sgt. Watson made any promises other than to make Mr. Scott's cooperation known to the prosecuting authorities. Neither Lt. Sturges nor Sgt. Watson made any threats or exhibited any use of force. There is no indication other than Mr. Scott's self-serving testimony at the suppression hearing that the government made fraudulent inducements to obtain his self-incriminating statement. We agree with the district court's denial of this claim.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Circuit Judge