UNITED STATES of America, Plaintiff,

v.

Charles C. McKEE, and Kevin Leroy
McLaughlin, Defendants.

Nos. 93–40037–01–SAC, 93–40037–02–SAC.

United States District Court,
D, Kansas.

Feb. 17, 1994.

Randall K. Rathbun, U.S. Atty., Wichita, KS, for District of Kansas and Gregory G. Hough, Asst. U.S. Atty., Topeka, KS, for the U.S.

Marilyn M. Trubey, Asst. Federal Public Defender, Topeka, KS, for Charles C. McKee.

James G. Chappas and John Ambrosio, Topeka, KS, for Kevin Leroy McLaughlin.

## MEMORANDUM AND ORDER

CROW, District Judge.

On November 17, 1993, the grand jury returned an indictment charging the defendants in Count 1 with conspiracy to manufacture 80 kilograms of amphetamine in violation of 21 U.S.C. § 846 and in Count 2 with maintaining a place for the purpose of manufacturing, distributing or using a controlled substance in violation of 21 U.S.C. § 856.

This case comes before the court upon the defendants' pretrial motions. The defendants have filed the following pretrial motions:

**Motions filed by Charles McKee (Represented by Marilyn Trubey):**

1. Motion to Suppress Statement (Dk. 16).

2. Motion to Suppress Evidence (Dk. 17).

**Motions filed by Kevin McLaughlin (Represented by John Ambrosio):**

1. Motion for Disclosure by Government (Dk. 20).

2. Motion to Compel the Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (Dk. 21).

The government has filed a response to each of the defendant's motions (Dk. 18, 19, and 24). The government has also filed a supplemental response to McKee's motion to suppress evidence.

On February 9, 1994, the court conducted a hearing on the defendants' motions. During that hearing, the government introduced the testimony of three witnesses and introduced seven exhibits. The court, having considered the evidence presented, the briefs and arguments of counsel, and the applicable law, is now prepared to rule.

**Motion to Suppress Statement (Dk. 16).**

McKee asks the court to suppress from evidence statements that he allegedly made to law enforcement officers on September 3, 1992, for the reason that the statements were not voluntary due to his intoxicated state. According to McKee's brief, he was intoxicated at the time he made statements to the police and that his inebriated state should have been obvious to officers.

The government responds, arguing that a review of the videotape[1] and transcript of the defendant's statement refute his claim that he was intoxicated. According to the government's brief, McKee neither indicated nor appeared to be intoxicated at the time he made statements to the officers. The government argues that even if McKee now claims that he was under the influence of drugs or alcohol at the time of his questioning, that fact is only a factor to be used in evaluating the voluntariness of his statements. The government also points to the absence of any allegation that the police used any coercive tactics during his questioning.

### Applicable Law

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." For purposes of *Miranda*, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

Post-arrest statements are admissible if the accused was informed of his Miranda rights and knowingly, intelligently and voluntarily waived them prior to making the statements. The burden rests with the government to prove a valid waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); *U.S. v. Amos*,

---

1. The government has not provided the court with a copy of such a videotape if such a videotape exists.

984 F.2d 1067, 1074 (10th Cir.1993). A court may find a proper waiver "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).[2] In considering whether the confession or statement is one of free will, the courts look to several factors, including: the age, education, and intelligence of the defendant; the length of detention and questioning; whether Miranda warnings were given; the defendant's physical and mental characteristics; and the location of the questioning. *U.S. v. Chalan,* 812 F.2d 1302, 1307 (10th Cir.1987); *see U.S. v. Short,* 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). Particularly important are the factors of the law enforcement's conduct and the defendant's capacity to resist the pressure to confess. *U.S. v. Casal,* 915 F.2d 1225, 1228 (8th Cir.1990), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991). "In no case, however, is any single factor determinative." *Chalan,* 812 F.2d at 1307. Once the defendant validly waives his Miranda rights, interrogation may continue until the defendant invokes his rights or changed circumstances suggest the responses have become involuntary. *U.S. v. Abreu,* 730 F.Supp. 1018, 1030 (D.Colo.1990), *aff'd,* 935 F.2d 1130 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991).

■ McKee apparently argues that his obvious state of intoxication left him unable to voluntarily waive his rights. The defendant, however, does not allege the existence of any coercive police questioning or actions. The defendant does not explain how the officers' actions were done in a manner to exploit his intoxicated state. Consequently, the defendant's argument is tantamount to the proposition that law enforcement officers must end all contact with an intoxicated defendant in custody and anything that an intoxicated defendant says during such contact is *per se* involuntary. The defendant has no authority for his position or this proposition. The lack of authority is not surprising, for the Supreme Court rejected this very proposition in *Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986) (A defendant's mental condition does not by itself determine the issue of voluntariness).

■ Intoxication does not singularly or automatically render a confession involuntary. *U.S. v. Muniz,* 1 F.3d 1018, 1022 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993); *U.S. v. Chrismon,* 965 F.2d 1465, 1469 (7th Cir.1992); *U.S. v. Casal,* 915 F.2d at 1229; *U.S. v. Newman,* 889 F.2d 88, 94–95 (6th Cir.1989), *cert. denied,* 495 U.S. 959, 110 S.Ct. 2566, 109 L.Ed.2d 748 (1990). The Supreme Court in *Connelly* held that "coercive police activity is a necessary predicate" to finding a confession involuntary. 479 U.S. at 167, 107 S.Ct. at 521. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion," the police must still overreach and exploit the known and existing condition. *Connelly,* 479 U.S. at 165, 107 S.Ct. at 520; *see U.S. v. Guerro,* 983 F.2d 1001, 1004 (10th Cir.1993). Consequently, when it appears the interrogators knew or reasonably should have known that the defendant was under the influence of intoxicants, a confession may be involuntary under "a lesser quantum of coercion." *U.S. v. Haddon,* 927 F.2d 942, 946 (7th Cir.1991).

At the hearing, Officer Dixon testified that he advised McKee of his *Miranda* rights and that based upon McKee's responses and demeanor, McKee appeared to understand those rights prior to waiving them. McKee indicated to Officer Dixon that he had consumed "a couple of beers" earlier that evening.

Although McKee had apparently consumed alcohol at some point in time before he was questioned by the police, nothing indicated

---

2. A court must satisfy itself of two things before finding a valid waiver of Miranda rights:
  "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.

  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."
  *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986).

that he was drunk or inebriated so as to significantly impair his cognitive functions. McKee was apparently responsive to Officer Dixon's questions. McKee, although taking time to answer the officer's questions, apparently responded in a coherent and direct fashion.

Officer Dixon testified that he had extensive experience with persons who were under the influence of drugs and alcohol. Officer Dixon indicated that there was nothing in McKee's demeanor or responsiveness that indicated that he was under the influence of any drug to the extent that it adversely affected McKee's ability to know and understand his rights.

In short, while there is evidence that McKee may have drunk "a couple of beers" at some point in time before he was questioned by the police, there is no evidence that the police exploited McKee's condition during their questioning of McKee. The court finds that the police did not use improper or coercive interrogation tactics during their questioning of McKee. McKee's statements to the police were the product of his intelligent and voluntary waiver of his *Miranda* rights.

The court denies McKee's motion to suppress statement.

## Motion to Suppress Evidence (Dk. 17).

McKee seeks an order suppressing the items seized during the execution of a search warrant on his residence on September 3, 1992, and during the entry by law enforcement officers at any time thereafter. McKee argues that (1) the search warrant was not supported by probable cause; and (2) the search warrant was insufficiently particular.

The government responds, arguing that the search warrant was supported by probable cause and that the warrant was sufficiently particular.

## Was the search warrant supported by probable cause?

McKee contends that the information provided by confidential informants was insufficient to provide probable cause to issue the search warrant. McKee contends that these informants did not provide sufficiently specific information concerning their observations, nor did they provide enough information to

indicate that the residence searched was the source of the drugs. McKee notes that at the time information was provided by the informants, both had criminal charges pending against them. McKee also notes that neither of the informants had provided information in the past that was accurate and useful to law enforcement. McKee also notes the absence of corroborating evidence to support the statements of the confidential informants. McKee also argues that the warrant is patently deficient and therefore is not saved by the good-faith exception.

The government responds, arguing that the information provided to the magistrate issuing the search warrant was clearly sufficient to demonstrate that probable cause existed to issue the search warrant. The government suggests that McKee's arguments are legally frivolous. The government suggests that McKee is essentially asking the court to view the information provided to the Magistrate in a vacuum, rather than viewing the evidence as a whole.

### Applicable Law

■■■ Generally, a search must be made pursuant to a warrant based on probable cause. U.S. Const. amend. IV. In deciding a suppression motion based upon the asserted failure of the affidavits to provide probable cause for the warrant, the reviewing court must remember that the magistrate is permitted to draw reasonable inferences from the affidavits and that the magistrate's determination is accorded great deference. *See United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir.1992); *United States v. Peveto,* 881 F.2d 844, 850 (10th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). When reviewing a magistrate's issuance of a search warrant the court must determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The magistrate must make a practical, common determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238,

103 S.Ct. at 2332. "In applying the test enunciated in *Gates,* this Court has stated that the affidavit should be considered in a common sense, nontechnical manner ..." *Edmonson,* 962 F.2d at 1540 (*quoting United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982) (citation omitted)).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.1993) ("The existence of probable cause is a 'common-sense standard' requiring 'facts sufficient "to warrant a man or reasonable caution in belief that an offense has been committed." ' ") (quoting *United States v. Mes-Rincon,* 911 F.2d 1433, 1439 (10th Cir.1990) (quoting *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949))).

■ The evidence to support probable cause must be particularized to the defendant for which the warrant is being sought. *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979).

It is not necessary, however, that the affidavit indicate that the evidence sought will undoubtedly be found in the place to be searched. Rather, it is only necessary that the facts and circumstances described in the affidavit warrant a man of reasonable caution to believe that such evidence is located at the premises or location to be searched.

*United States v. Johnson,* 645 F.2d 865, 867–868 (10th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). In *United States v. Reyes,* 798 F.2d 380 (10th Cir.1986), the defendant, who sought to suppress an audio cassette tape seized from his residence, contended that the information in the affida-vit used to secure the search warrant contained no specific link to his residence. The Tenth Circuit rejected the defendant's argument:

The affidavit did indicate that participants in the conspiracy maintained records regarding their activities. It is reasonable to assume that certain types of evidence would be kept at a defendant's residence and an affidavit need not contain personal observations that a defendant did keep such evidence at his residence.

*United States v. Reyes,* 798 F.2d at 382 (10th Cir.1986).

■ The information provided to the magistrate was sufficient to support a finding of probable cause. McKee essentially attempts to view each piece of information provided to the magistrate in isolation. Two persons, apparently independently, provided information upon which a person could reasonably conclude that drugs were being manufactured and produced at McKee's residence. One informant provided information approximately two months before the officers applied for the search warrant; the other informant supplied information on the day the officers applied for search warrant.[3] The information provided by the confidential informants, although not corroborated by the officers' surveillance, was specific and detailed to some extent. Each of the confidential informants provided information that essentially corroborated the information provided by the other. Nor does the fact that neither confidential informant had provided reliable information in the past change this result. *See United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992) ("[T]here is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information.").

■ In sum, the affidavit and other information provided to the magistrate was sufficient to establish probable cause. In any event, the court is satisfied that the evidence from the search warrants is admissible under the "good-faith" exception recognized by the

---

**3.** At oral argument, McKee argued that the information supplied by the informants was stale. The court rejects this argument. *See, generally,*

*United States v. Pace,* 981 F.2d 1123, 1133–34 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993).

Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[4]

### Was the search warrant sufficiently particular?

McKee contends that the description in the search warrant of his rental property was insufficient. McKee first complains that there was no street description contained in the search warrant, nor were there directions to the property to be searched, nor were there any documents attached to the search warrant which gave such information. McKee contends that the property described in the search warrant contained two structures, a two-story house and a trailer house. McKee contends that there was no information that the trailer house was suspected of being the site of illegal activity. McKee also contends that a legal description is inadequate as it lacks "practical accuracy," i.e., an officer executing the warrant would have to go to the register of deeds to determine the physical location of the property.

McKee argues that the search warrant is not saved by the contents of the warrant application because neither the affidavit nor the application were attached to the search warrant at the time it was executed. McKee notes that the transcript of the testimony given in support of the search warrant at issue did not exist until seven days after the search.

McKee also argues that the search warrant authorizes, among other things, "containers suitable for containing controlled substance." McKee contends that this description lacks particularity required by the Fourth Amendment, and allowed the officers to search virtually everything on the property.

The government responds, arguing that the search warrant reasonably described the property to be searched and that the warrant stated with sufficient particularity the items to be seized. The government also argues that "the affidavit and application, testimony and the warrant stated with sufficient particularity the place to be searched and items to be seized."

In a supplemental response to McKee's motion, the government argues that the motion to suppress should be denied under the "inevitable discovery" exception to the exclusionary rule. McKee responds to the government's "inevitable discovery" theory, arguing that it is inapplicable to the case at bar.[5]

### Particularity Requirements

"The Fourth Amendment requires that search warrants describe the place to be searched with particularity. U.S. Const. Amend. IV." *United States v. Occhipinti,* 998 F.2d 791, 799 (10th Cir.1993). "To pass muster under the Fourth Amendment, '[t]he warrant must describe the place to be searched with sufficient particularity so that the executing officer can locate and identify it with reasonable effort. The requisite specificity of the description differs for rural and urban areas and depends heavily on the facts of each case.'" *United States v. Williamson,* 1 F.3d 1134, 1135–1136 (10th Cir.1993) (quoting *United States v. Dorrough,* 927 F.2d 498, 500 (10th Cir.1991)). "'[P]ractical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched.'" *Id.*

In making this determination, the court should "read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit." *Occhipinti,* 998 F.2d at 799.[6]

---

4. In *Leon,* the Supreme Court held that evidence seized under a search warrant later determined to be invalid may be admissible if the officers executing the warrant acted in good faith and with objectively reasonable reliance on the search warrant. *See United States v. Corral-Corral,* 899 F.2d 927, 932 (10th Cir.1990) (summarizing the law concerning the "good-faith" exception recognized in *Leon* ).

5. In light of the court's ruling it is unnecessary for the court to reach this issue. The court notes, however, that the government's position, both legally and factually, was tenuous at best.

6. However, the court may not consider the contents of the warrant application or its accompanying affidavit to cure a defective warrant unless (1) the affidavit and search warrant are physically connected so they constitute one document; *and* (2) the search warrant expressly refers to the

"The knowledge of the executing officer can be considered in determining the sufficiency of the description." *Id.*[7]

■ At the outset, McKee's argument that the legal description of the property is insufficiently particular is unsupported and is simply without merit. *See, e.g., Occhipinti,* 998 F.2d at 799 (even though legal description of property contained a typographical-type error, no infirmity in warrant). The officers applying for the search warrant specifically made the effort to obtain the legal description of McKee's rental property—apparently to insure that the property to be searched was precisely described in the warrant. The court also notes that some of the same officers executing the search warrant were the same officers who applied for the search warrant.[8]

■ The balance of McKee's arguments pertaining to the particularity of the search warrant are not so easily dispensed. Although not specifically argued by the defendant, the Tenth Circuit has recently held that "when officers intend to search a residence, an ambiguous warrant describing only the lot of land to search is inconsistent with the Fourth Amendment's particularity required given the special sanctity our jurisprudence has placed on the home." *United States v. Dahlman,* 13 F.3d 1391 (10th Cir.

1993) (2–1; Tacha, J., dissenting in regard this issue, but concurring in affirming the district court). Under this recent precedent, the search warrant in the case at bar fails to meet the particularity requirements of the Fourth Amendment.

In *Dahlman,* the search warrant only authorized the search of specified subdivision lots. As in the case at bar, no mention was made of any residence or other structures to be searched. Officers searched a camping trailer, the cabin in which the defendant was residing and the surrounding grounds.

The Tenth Circuit held that "where officers intend to search a residence, the description of the property to be searched may not be so ambiguous as to leave doubt as to the scope of the search." The search warrant in *Dahlman* utilized a standard form which required that a box be checked indicating whether a "person" or "premises" is to be searched. Even though a box containing the word "premises" was checked on the search warrant form, this was not sufficient to search the "residence."

In reaching its decision in *Dahlman,* the court of appeals recognized that the rule of law announced departed from the law announced in both the Eighth and Ninth Circuits. In light of the fact that this was a new rule of law, the Tenth Circuit held that the

affidavit and incorporate it by reference using suitable words of reference. *Williamson,* 1 F.3d at 1136 n. 1 (quoting *United States v. Leary,* 846 F.2d 592, 603 (10th Cir.1988) (quoting 2 Wayne R. LaFave, Search and Seizure § 4.6(a), at 241 (2d ed. 1987))).

In the case at bar, the transcript of the officers' application was apparently not attached to the search warrant at the time it was executed.

7. Although an executing officer's knowledge may be a curing factor, the officer's knowledge in the case may not be the *sole* source of information identifying the physical location of the premises to be searched. *Williamson,* 1 F.3d at 1136.

In *Williamson,* the description in the search warrant was not even "practically accurate," as instead of describing the building to be searched, the search warrant described a rural mail box located about one mile east and eight miles south of the premises to be searched. Nevertheless, the government argued that the executing officer's knowledge saved the search warrant. The Tenth Circuit disagreed.

In effect, then, the government asks us to adopt a rule that an executing officer's knowl-

edge *alone* is sufficient to satisfy the Fourth Amendment's particularity requirement. Because such a rule would be fundamentally inconsistent with the requirement of a *written warrant,* we conclude that the search warrant at issue was invalid. *Id.* The Tenth Circuit also held that the government was not entitled to the "good faith" exception to the exclusionary rule. *Id.*

*Williamson* is distinguishable from the case at bar in that the executing officer's knowledge was not the sole source of the information identifying the physical location of the premises to be searched. Unlike *Williamson,* where the search warrant contained no accurate description of the property to be searched, the search warrant in this case contained a legal description of the property to be searched.

8. At oral argument, the government clarified that the list of names attached as an exhibit to its response to the defendant's motion to suppress evidence was a list of the officers executing the search warrant.

good-faith exception in *Leon* precluded exclusion of evidence.

It therefore appears that the search warrant in the case at bar is deficient under Tenth Circuit precedent. The search warrant issued in the case at bar contained only a description of the tract of land upon which the residence to be searched was located; the search warrant does not specifically authorize the search of McKee's residence.[9]

However, the defendant's motion to suppress will be denied for several of the same reasons that the Tenth Circuit denied the defendant's motion to suppress in *Dahlman*. First, the court notes that the defendant does not make the specific arguments advanced in *Dahlman*. Second, the search in this case was executed over a year before *Dahlman* was decided; obviously, the officers executing the warrant could not be held to know a standard that did not otherwise exist at that time. Similar to *Dahlman*, the officers executing the warrant apparently searched all of the structures located on the property described in the search warrant. As in *Dahlman*, the good faith exception to the exclusionary rule applies.

### Is the Warrant Overbroad?

■ A search warrant must also describe the items to be seized with particularity, as general, exploratory, searches are proscribed by the Fourth Amendment.

The particularity requirement of the Fourth Amendment "prevents a 'general, exploratory rummaging in a person's belongings,' *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L.Ed.2d 564, 91 S.Ct. 2022 (1971) and ' "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." ' " *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988) (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 13 L.Ed.2d 431, 85 S.Ct. 506 (1965)). It " 'ensures that a search is confined in scope to particularly described evidence

relating to a specific crime for which there is demonstrated probable cause.' " *United States v. Leary*, 846 F.2d at 600 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir.1985)); *see also United States v. Sullivan*, 919 F.2d [1403] at 1424 [ (10th Cir.1990) ]; *United States v. Mesa–Rincon*, 911 F.2d [1433] at 1440 [ (10th Cir. 1990) ]. A warrant describing "items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d [770] at 775 [ (10th Cir.1990) ]; *United States v. Leary*, 846 F.2d at 600.

*Wicks*, 995 F.2d at 973.

■ McKee complains that the search warrant was overbroad and permitted a search of virtually everything on the property. The court rejects this argument and finds that the warrant described the items to be seized with sufficient particularity. Warrants authorizing searches of similar breadth, issued under circumstances similar to the facts of the case at bar, have been upheld by the Tenth Circuit. *See Wicks*, 995 F.2d at 973 ("We have upheld search warrants cast in comparably broad terms, where the subject of the search was a drug trafficking or drug dealing business, and where circumstances permitted only a more general listing of the items to be seized.").

In sum, McKee's motion to suppress evidence is denied.

### Motion for Disclosure by Government (Dk. 20).

Kevin McLaughlin seeks an order directing the government to disclose Fed.R.Evid. 404(b) evidence it intends to offer at trial.

The government responds that it does not intend to offer Rule 404(b) evidence against the defendant.

McLaughlin's motion is denied as moot.

---

9. The search warrant does, however, authorize the search for controlled substances in "out buildings and motor vehicles on the premises."

Motion to Compel the Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (Dk. 21).

McLaughlin seeks an order compelling the government to disclose the existence and substance of any promises of immunity, leniency or preferential treatment. McLaughlin suggests that this is a serious drug case involving a "number of defendants, witnesses who have not been charged and possibly confidential informants."

The government responds that it is unaware of any promises of immunity, leniency or preferential treatment that have been made and accepted by any party.

McLaughlin's motion is denied as moot. The government is, however, reminded of its continuing obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

IT IS THEREFORE ORDERED that McKee's "Motion to Suppress Statement" (Dk. 16) is denied.

IT IS FURTHER ORDERED that McKee's "Motion to Suppress Evidence" (Dk. 17) is denied.

IT IS FURTHER ORDERED that McLaughlin's "Motion for Disclosure by Government" (Dk. 20) is denied as moot.

IT IS FURTHER ORDERED that McLaughlin's "Motion to Compel the Disclosure of Existence and Substance of Promises. of Immunity, Leniency or Preferential Treatment" (Dk. 21) is denied as moot.