**UNITED STATES of America, Plaintiff,**

v.

**James Gustav HOGAN, Defendant.**

**No. 96–40006–01–SAC.**

United States District Court,
D. Kansas.

June 18, 1996.

Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, for James Gustav Hogan.

James E. Flory, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion to suppress evidence (Dk. 17), motion to compel discovery regarding informant (Dk. 18); motion for Rule 404(b)

disclosure (Dk. 20); and motion to suppress statement (Dk. 21). The government has responded opposing these motions. (Dk. 23). On March 22, 1996, the court heard arguments and evidence on these motions, denied the motion for 404(b) disclosure (Dk. 20) as moot, and deferred ruling on the other motions until the defendant's mental competency issues had been resolved. (Dk. 25). By written order filed March 22, 1996, the court granted the defendant's motion (Dk. 19) for mental evaluation. (Dk. 24).

At the hearing on the defendant's mental competency held June 10, 1996, the court found that the defendant was not suffering from a mental disease or defect at the time of the alleged offense or at the present time so as to impair his ability to assist in his defense. At the competency hearing, the parties said they had nothing to add to their positions on the pending motions. Having reviewed the matters and evidence submitted, the court is ready to rule.

## INDICTMENT

The grand jury returned an indictment on January 31, 1996, charging the defendant with one count of bank robbery. Specifically, the indictment charges that the defendant on January 10, 1996, unlawfully took by force and violence and intimidation from Shannon A. Mark approximately $6,425.00 in currency belonging to Lyon County State Bank, Emporia, Kansas, in violation of 18 U.S.C. § 2113(a).

## FACTS

The following facts are taken from the Officer Patrick Ford's affidavit submitted in support of the search warrant. On January 10, 1996, a man wearing sunglasses entered the Lyon County State Bank and approached the teller station serviced by Shannon Mark. The man handed Mark a sealed white envelope. Mark opened the envelope and read the note which said: "I have a gun. Pass the money fast. No dye pacs, or you die." Mark first pulled the bait money which tripped the alarm and activated the lobby cameras. She then handed over $6,425 in cash, approximately $3,000 in twenty dollar bills and the remaining in fifty and one hundred dollar bills. The robber put the money in a tote bag and went out the south doors of the bank.

Bank employees generally described the robber as a skinny white male who was approximately 5'7" to 5'8" tall. He appeared young and no older than his mid-twenties. He did not have any facial hair. He was wearing a ball cap, and his hair was short as none was hanging out of the cap. He wore dark sunglasses which kept them from seeing his eyes. He also wore a blue and white bandanna and a loose-fitting jacket. The color of his tote bag was tan.

In responding to the alarm, Lieutenant Heinitz with the Emporia Police Department drove south on Constitution Street where he observed a white male wearing a baseball cap and carrying a tote bag walk between two houses in the 900 block of Constitution Street. When he arrived at the bank and heard the descriptions of the robber, Heinitz realized that he had probably seen the suspect in the 900 block of Constitution Street.

On January 11, 1996, Detective Davis with the Emporia Police Department was contacted by a cooperating individual ("CI") concerning this bank robbery. Officer Ford's affidavit reports that the CI provided the following information:

The CI says that on 1–10–96, James HOGAN asked the CI if the CI read the newspaper tonight (about the bank robbery). HOGAN told the CI, "that was me." The CI said HOGAN was flashing a lot of money, including stacks of one-hundred dollar bills. The money was in a brown cloth square bag. HOGAN told the CI that he had robbed a bank that same day. HOGAN said he went into the bank, gave the teller a note, threatened her, and she gave him the money. The CI said HOGAN was wearing a blue bandanna when he told the CI about robbing the bank. HOGAN said after robbing the bank, he went home to 920 Congress Street.

The CI says that James HOGAN is a white male with blue eyes and brown hair. His head is almost shaved and is 5'10" tall and 125 pounds and wears baggy clothing. The CI said HOGAN lives on ground floor of 920 Congress Street, Emporia, Lyon

County, Kansas, and has a roommate named Jeff, who drives a black extended cab pick-up truck.

The CI said that HOGAN left town but said he left most of the money with his roommate, Jeff, at 920 Congress Street. Based upon the above facts, officers obtained a search warrant for the ground floor premises of 920 Congress Street, Emporia, Kansas, to search for a dark or bright blue baseball cap, a blue jacket, tan or gray baggy pants, dark wrap-around sunglasses, blue and white bandanna, tan boots or tan high-top tennis shoes, a tan square tote bag, and $6,425.00 cash, including serial numbered twenty dollar bills.

It is undisputed that Emporia police officers executed the search warrant on January 12, 1996, and seized such items as a blue baseball cap, tote bag, sunglasses and blue bandannas. An arrest warrant was later issued for James Hogan.

Officers of the Garden City, Kansas Police Department along with special agents from the Federal Bureau of Investigation ("FBI") arrested Hogan at a motel in Garden City on January 12, 1996. Hogan was taken to the Garden City Police Department where he was interviewed approximately an hour later.

Special FBI Agent Darrell Yarnall and Detective Sergeant Michael Utz of the Garden City Police Department met with Hogan in the interview room. Agent Yarnall read the advice of rights form to Hogan and showed it to him. Hogan told Agent Yarnall that he understood his *Miranda* rights and then signed the written waiver. From his experience in handling intoxicated persons and persons suffering from mental illness, Agent Yarnall was not able to observe in Hogan a pattern of statements or actions consistent with being under the influence of alcohol or drugs or consistent with suffering from a mental disease or defect. Agent Yarnall testified that Hogan was talkative during the interview but that this was not unusual for some suspects. Hogan made a couple of statements that were "a little abnormal," but he demonstrated an adequate ability to understand and communicate. He answered questions responsively and reasonably and even propounded some questions to the offi-

cers. Hogan's eyes were focused, and his skin color seemed appropriate. Agent Yarnall said that Hogan was never threatened, forced, coerced or pressured into answering any questions. Hogan never asked for the interview to end and never said that he did not understand a question or did not know why he was being interviewed. Hogan told the officers that he committed the bank robbery in Emporia and that he was "high" on drugs when he did it. Hogan did not say whether he was under the influence of drugs at the time of his arrest or interview. Hogan's account of the bank robbery at Emporia was consistent with the facts as known by the interviewing officers. When asked if he had robbed the Dodge City bank, Hogan answered that he did not rob this bank and that he would not say he had committed a crime unless he had done it. The interview with Yarnall and Utz lasted approximately thirty to forty minutes.

Later that same evening, William Halvorsen, an agent with the Kansas Bureau of Investigation, and Officer Ford interviewed Hogan after reminding him of his *Miranda* rights. Hogan responded that he was aware of his rights and that he waived them. Agent Halvorsen did not observe behavior that indicated Hogan was presently suffering from a mental disease or defect or was intoxicated. Hogan tracked the questions and gave direct, detailed and logical responses. Halvorsen testified that Hogan's account of the Emporia bank robbery was consistent with the facts as Halvorsen knew them and that Hogan's account was far more detailed than those found in the media reports. Hogan told Halvorsen that he would tell the officers the truth that night as he had a plan to "get off" based on temporary insanity. Halvorsen said that there were no attempts made to coerce or pressure the defendant into talking with them. Halvorsen testified the interview lasted approximately one hour and fifteen minutes.

## MOTION TO SUPPRESS EVIDENCE
(Dk. 17)

Hogan seeks to suppress all items seized during the search of 920 Congress, Emporia, Kansas. Hogan argues the affidavit on which the search warrant was issued lacks

probable cause, because it does not offer any basis for believing the cooperating individual ("CI") is reliable or credible. In particular, Hogan points out that the affidavit does not assert any attempt to corroborate the CI's statement, does not provide any information or opinion regarding the CI's reliability, and does not show that the CI's stated knowledge about the bank robbery was unique or could only have been obtained from the bank robber.

■ Generally, a search must be made pursuant to a warrant based on probable cause. U.S. Const. amend. IV. On a motion to suppress challenging the sufficiency of an affidavit, the district court does not review the affidavit de novo but accords "great deference" to the magistrate's determination of probable cause for issuance of a warrant. *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *see United States v. Edmonson,* 962 F.2d 1535, 1540 (10th Cir.1992); *United States v. Peveto,* 881 F.2d 844, 850 (10th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The reviewing court need only determine whether the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. at 236, 103 S.Ct. at 2331. The magistrate must make a practical, common-sense determination from the totality of the circumstances presented whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238, 103 S.Ct. at 2332. "In applying the test enunciated in *Gates,* this Court has stated that the 'affidavit should be considered in a common sense, nontechnical manner ...'" *Edmonson,* 962 F.2d at 1540 (quoting *United States v. Massey,* 687 F.2d 1348, 1355 (10th Cir.1982) (citation omitted)).

■ "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates,* 462 U.S. at 232, 103 S.Ct. at 2329. The Supreme Court has found it sufficient to say that probable cause is more than a mere suspicion, but considerably less than what is necessary to convict someone. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *see United States v. Wicks,* 995 F.2d 964, 972 (10th Cir.) ("The existence of probable cause is a 'common-sense standard' requiring facts sufficient ' "to warrant a man of reasonable caution in belief that an offense has been committed." ' ") (quoting *United States v. Mesa–Rincon,* 911 F.2d 1433, 1439 (10th Cir. 1990) (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)), *cert. denied,* 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993)). Hearsay, even multiple hearsay, may be used to establish probable cause for a search warrant. *U.S. v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 874 n. 3 (10th Cir.1992).

■ In *Gates,* the Supreme Court abandoned the requirement that an officer set forth an informant's reliability in the affidavit. 462 U.S. at 238, 103 S.Ct. at 2332. The courts are to determine an informant's credibility or reliability and basis of knowledge under a flexible totality of circumstances standard. *United States v. Smith,* 63 F.3d 956, 961 (10th Cir.1995), *cert. granted and vacated on other grounds,* — U.S. —, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). "Veracity and basis of knowledge are not, however, rigid and immovable requirements in the finding of probable cause. A deficiency in one element may be compensated for 'by a strong showing as to the other, or by some other indicia of reliability.'" *United States v. Corral,* 970 F.2d 719, 727 (10th Cir.1992). Consequently, the affiant need not declare the informant's reliability when the informant's statements are corroborated by extrinsic information. *United States v. Sturmoski,* 971 F.2d 452, 457 (10th Cir.1992); *see United States v. Smith,* 63 F.3d at 961.

■ The issuing judicial officer for the State of Kansas had sufficient information on which to find probable cause. The CI heard first-hand the defendant's account of the bank robbery, personally observed the money and the brown tote bag, and personally knew the defendant's physical appearance, typical dress, and residence. An informant's first-hand observations generally are "entitled to greater weight." *United States v. Corral,* 970 F.2d at 727. Many of the salient

details in the CI's statements were corroborated by extrinsic information also supplied in the affidavit. The CI's physical description of Hogan was similar to the descriptions of the suspect given by Lieutenant Heinitz and the bank employees. The CI said that Hogan wears baggy clothing, and the bank employees observed that the suspect's clothing was baggy and loose-fitting. A bank employee said that the suspect was wearing a blue bandanna, and the CI said that Hogan was wearing a blue bandanna on the same day as the bank robbery. Bank employees observed the suspect place the money in a brown tote bag, and the CI observed that Hogan had a "lot of money" in a brown cloth square bag. The CI told the detective that Hogan lived on the ground floor of 920 Congress Street, and Lieutenant Heinitz had seen an individual fitting the suspect's description shortly after the bank robbery in the 900 block of Constitution Street. Given all the circumstances and details set forth in the affidavit, the court is satisfied that the issuing judicial officer had a substantial basis for concluding that probable cause existed.

Even if the court were to conclude that the affidavit failed to provide probable cause, the court would still deny the motion as the record indicates nothing on which to question the officers' good faith reliance on the probable cause determination made by the issuing judge. *See United States v. McKneely,* 6 F.3d 1447, 1453–55 (10th Cir.1993).

**MOTION TO COMPEL DISCOVERY REGARDING INFORMANT** (Dk. 18).

The defendant seeks an order requiring the government to disclose the name and address of the CI, the CI's prior record, and any promised immunities or agreements with the CI. The defendant further seeks to have the government produce the CI as a witness, provide any memoranda concerning communications with the CI, and disclose the results, if any, from a polygraph examination of the CI. The government opposes disclosure arguing that the CI was a mere tipster and was not involved in the illegal activity with which the defendant is charged. The government complains that the defendant's request is nothing more than speculation about the usefulness of the CI's testimony. Final-

ly, the government represents that it does not intend to call the CI as a witness at trial.

■ The Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957), recognized the compelling public interest in favor of effective law enforcement and created a privilege that permits the government to withhold the identity of informants. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1000 (10th Cir.1992). Though anonymity encourages and protects informants, the Supreme Court held that the privilege yields to fairness if the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628. A decision on disclosure of identity entails "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." 353 U.S. at 62, 77 S.Ct. at 628–29. Striking a proper balance depends on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

■ The burden is on the defendant to come forward with evidence establishing that the *Roviaro* criteria favor disclosure. *United States v. Blevins,* 960 F.2d 1252, 1258–59 (4th Cir.1992). More than suspicion or speculation is needed to meet the defendant's burden. *United States v. Williams,* 898 F.2d 1400, 1402 (9th Cir.1990). " 'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence.' " *Blevins,* 960 F.2d at 1259 (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 510[06] (1991)); *see also United States v. Ridley,* 814 F.Supp. 992, 996 (D.Kan.1993).

■ As a general rule, the Tenth Circuit requires disclosure when the informant's testimony "might be relevant to the defendant's case and justice would best be served by disclosure." *United States v. Reardon,* 787 F.2d 512, 517 (10th Cir.1986). In practice, the Tenth Circuit has not required disclosure

"where the information sought 'would be merely cumulative,' or where the informer did not participate in the illegal transaction," *Mendoza–Salgado,* 964 F.2d at 1001 (quoting *United States v. Scafe,* 822 F.2d 928, 933 (10th Cir.1987)) (other citations omitted), where the informant is not a participant or witness to the crime, *United States v. Brantley,* 986 F.2d 379, 383 (10th Cir.1993), or where the informant is a mere tipster, *United States v. Wynne,* 993 F.2d 760, 766 (10th Cir.1993).

■ The defendant argues the search warrant was largely based on the CI's statements that the defendant had admitted to being the bank robber. According to the defendant, the validity of the warrant depends on the CI's knowledge and credibility, neither of which can be assessed without knowing the CI's identity. The defendant's argued reasons for disclosure are insufficient as a matter of law.

The defendant has not requested an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The defendant has not made or even attempted to make a substantial preliminary showing that the affiant intentionally or recklessly included a false statement in the warrant affidavit and that the false statement is necessary to the probable cause finding. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

■ Apparently, the defendant seeks to learn the informant's identity in the bare hope of finding evidence to support a later *Franks* hearing request. Circuit courts have upheld non-disclosure under these same circumstances:

> Nonetheless, they seek disclosure of the informant's identity in the hope that disclosing the identity of the informant will lead to evidence that will help them make a *Franks* showing. In these circumstances, we believe that the *Roviaro* balance will tend to tip against disclosing the informant's identity. A defendant who merely hopes (without showing a likelihood) that disclosure will lead to evidence supporting suppression has not shown that disclosure will be "relevant and helpful to

the defense ... or is essential to a fair determination" of the case, *Roviaro,* 353 U.S. at 60–61 [77 S.Ct. at 628]. (other citations omitted).

In *Franks,* the Court left open "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant *once a substantial preliminary showing [the affiant's] falsity has been made.*" 438 U.S. at 170 [98 S.Ct. at 2684]. (emphasis added). While expressly not reaching the issue, the Court's statement suggests that *if* revelation of the identity of an informant is ever required in the context of a motion for a *Franks* hearing, it would only be *after* the defendant made a substantial preliminary showing of the affiant's reckless or intentional disregard for the truth. Several courts of appeals have, at least implicitly, so held. *See, e.g., United States v. Kiser,* 716 F.2d 1268, 1271–73 (9th Cir.1983) (holding that defendant was entitled to disclosure of informant but only because defendant had first made substantial preliminary showing of affiant's untruthfulness entitling defendant to a *Franks* hearing); [*United States v.*] *Schauble,* 647 F.2d [113] at 116–17 [ (10th Cir.1981) ] (holding that because the defendant had not made a substantial showing of the affiant's untruthfulness, the district court did not abuse its discretion in denying defendant's request for *in camera* disclosure of informant whose tip was basis for search warrant). Similarly, we hold here that, because the defendants' offer of proof failed to show that the affiant was untruthful, the district court did not abuse its discretion in refusing to order disclosure of the informant.

*United States v. Brown,* 3 F.3d 673, 679–80 (3rd Cir.) (footnote omitted), *cert. denied,* 510 U.S. 1017, 114 S.Ct. 615, 126 L.Ed.2d 579 (1993). The rule is the same in the Tenth Circuit. To obtain disclosure of a confidential informant referred to in a search warrant affidavit, "the defendant must make a substantial showing that the *affiants* knowingly made false statements, or made statements with reckless disregard for the truth." *United States v. Hernandez,* 829 F.2d 988, 992 (10th Cir.1987), *cert. denied,* 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *see*

*United States v. Bloomgren,* 814 F.2d 580, 583–84 (10th Cir.1987). The defendant here fails to clear this hurdle of a substantial preliminary showing.

The CI was not a percipient or transactional witness to the crime charged. The CI had no role in the actual search of the defendant's residence. Whatever the CI saw or heard is not the basis on which the crime is charged. "In short, the informant's role ended after providing the police with relevant information that served as the foundation for obtaining the search warrant." *United States v. Bender,* 5 F.3d 267, 270 (7th Cir. 1993). The CI here was a mere tipster. The defendant has not shown that the balance of factors favor disclosure of the CI's identity.

**MOTION TO SUPPRESS STATEMENT** (Dk. 21).

Hogan seeks to suppress statements he made following his arrest arguing that they were not voluntarily made. Hogan alleges that at the time of his arrest and during the subsequent interviews he "was extremely high on a combination of alcohol, marijuana, speed, acid, and cocaine." Hogan further alleges that he has suffered from a mental illness for a lengthy period of time. In light of his intoxicated state and mental illness, Hogan insists he was incapable of knowingly and voluntarily waiving his *Miranda* rights. Finally, Hogan alleges that the officers were aware of his unstable mental condition and intoxicated state and engaged in overreaching to obtain his statements. The government denies any coercion or overreaching during the interrogation and maintains that the defendant knowingly and voluntarily waived his rights.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." For purposes of *Miranda,* interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

A suspect who has been informed of his Miranda rights "may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. The burden rests with the government to prove a valid waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168–69, 107 S.Ct. 515, 522–23, 93 L.Ed.2d 473 (1986); *United States v. Amos,* 984 F.2d 1067, 1074 (10th Cir.1993). A court may find a proper waiver "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).[1] In considering whether the confession or statement is one of free will, the courts look to several factors, including: the age, education, and intelligence of the defendant; the length of detention and questioning; whether Miranda warnings were given; the defendant's physical and mental characteristics; and the location of the questioning. *United States v. Chalan,* 812 F.2d 1302, 1307 (10th Cir.1987), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988); *see United States v. Short,* 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). "In no case, however, is any single factor determinative." *Chalan,* 812 F.2d at 1307. Once the defendant validly waives his Miranda rights, interrogation may continue until the defendant invokes his

---

1. A court must satisfy itself of two things before finding a valid waiver of Miranda rights:

   "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.

   Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."

   *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).

rights or changed circumstances suggest the responses have become involuntary. *United States v. Abreu*, 730 F.Supp. 1018, 1030 (D.Colo.1990), *aff'd*, 935 F.2d 1130 (10th Cir.), *cert. denied*, 502 U.S. 897, 112 S.Ct. 271, 116 L.Ed.2d 224 (1991).

■ In deciding if the waiver was intelligent, the court looks at whether "the defendant knew that he did not have to speak to police and understood that statements provided to police could be used against him." *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir.1990) (citation omitted), *cert. denied*, 499 U.S. 908, 111 S.Ct. 1111, 113 L.Ed.2d 220 (1991). The defendant need not appreciate "the tactical advantage of remaining silent" for the waiver to be intelligent. *Id.* The Supreme Court has "never 'embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness.'" *Connecticut v. Barrett*, 479 U.S. 523, 530, 107 S.Ct. 828, 832, 93 L.Ed.2d 920 (1987) (quoting *Oregon v. Elstad*, 470 U.S. 298, 316, 105 S.Ct. 1285, 1297, 84 L.Ed.2d 222 (1985)).

■ A defendant's mental condition does not by itself determine the issue of voluntariness. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). For that matter, intoxication does not singularly or automatically render a confession involuntary. *United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir.), *cert denied*, 510 U.S. 1002, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993); *United States v. McKee*, 846 F.Supp. 930, 933 (D.Kan.1994). "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion," the police must still overreach and exploit the known and existing condition. *Connelly*, 479 U.S. at 165, 107 S.Ct. at 520.

■ There is nothing to suggest that the officers were exploiting the defendant's alleged condition. The record does not show the officers asked Hogan complicated or trick questions or subjected him to lengthy and uninterrupted interrogation. The defendant never asked for the officers to stop and never said that he could not understand a question. The court has no basis for believing that the officers' conduct or questions were coercive or overbearing. In short, the evidence does not show that the defendant's intoxicated condition was so severe or his mental state so disabling as to render him unable to make a voluntary statement or unduly susceptible to manipulation by the officers. The Fifth Amendment's guarantees do not "protect a defendant from his own compulsions or internally-applied pressures which are not the product of police action." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir.1993). The evidence does not sustain any reasonable inference that the officers took unfair advantage of the defendant's condition. The court is convinced that the defendant's conditions did not incapacitate him or otherwise vitiate the voluntariness of his waiver.

■ The defendant told officers that he understood his *Miranda* rights and agreed to answer their questions. The defendant gave rational, detailed, coherent, and responsive answers to the questions asked. His memory was intact as shown by his ability to recall the details of the bank robbery. Officers observed that the defendant remained conscious, kept his eyes focused, and appeared mentally alert throughout the interrogation. The defendant never complained that he was too intoxicated or mentally troubled to continue answering the officers' questions. As revealed by his answers, the defendant understood that he was being interrogated about the Emporia bank robbery and that his comments could be used against him. Finally, the written waiver is strong evidence that the defendant voluntarily and knowingly waived his rights.

In sum, the court finds that the defendant voluntarily and intelligently waived his rights after the warning. The defendant's motion to suppress his statements is denied.

IT IS THEREFORE ORDERED that the defendant's motion to suppress evidence (Dk. 17) is denied;

IT IS FURTHER ORDERED that the defendant's motion to compel discovery regarding informant (Dk. 18) is denied;

IT IS FURTHER ORDERED that the defendant's motion to suppress statements (Dk. 21) is denied.